IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

BASF CORPORATION,

      Plaintiff,

      v.

L&M COLLISION, INC. d/b/a
SOUTHEAST COLLISION
CENTER; and LINDA LARSON,

      Defendants.

CIVIL ACTION NO.: 4:24-cv-216

**O R D E R**

This matter comes before the Court on Plaintiff BASF Corporation's Motion for Default

Judgment against Defendant L&M Collision, Inc. (Doc. 22.)  For the reasons set forth below, the

Court **GRANTS** Plaintiff's Motion **IN PART**.  Plaintiff has demonstrated that its claims fall

within this Court's subject matter jurisdiction.  Moreover, Defendant L&M is subject to the Court's

personal jurisdiction and has been served with the Complaint and has failed to respond.

Additionally, the Complaint sufficiently establishes Defendant L&M's liability on Plaintiff's

claims for breach of contract and unjust enrichment as well as its request for costs.  However, the

Court declines to award the full amounts of damages and costs sought by Plaintiff.

**BACKGROUND**

Plaintiff BASF Corporation ("BASF") is a business that sells aftermarket products and

materials (such as paints and refinishes) for the reconditioning, refinishing and repainting of

automobiles (hereinafter, "refinishing products").  (Doc. 1, p. 2.)  In August 2018, it entered into

a "Requirements Agreement" with Defendant L&M Collision, Inc. (hereinafter "Body Shop"),

which was an autobody shop engaged in the business of reconditioning, refinishing and repainting automobiles. (Id. at pp. 2–3.) Paragraph 2 of the Requirements Agreement states:

> 2. Purchase of Requirements of Products:  During the Term of this Agreement, Body Shop shall, and shall cause each of its Controlled Businesses to purchase from an authorized BASF distributor one hundred percent (100%) of their Refinish Products requirements for the Business specifying only BASF Glasurit and RM brand products.

(Doc. 22-2, p. 3.)  The "Term" of the Requirements Agreement is described, in pertinent part, as follows:

> The Term of this Agreement shall . . . continue until Body Shop . . . and or until its Controlled Businesses have reached the Minimum Purchase Requirement of $487,000 in the aggregate of BASF Glasurit and RM products, net of all BASF and distributor discounts, rebates, returns and credits ('Minimum Purchase Requirements'), subsequent to the Effective Date [as stated within the Requirements Agreement].

(Id.)

Additionally of note, Paragraph 3—entitled "Contract Fulfillment Consideration"—provides that BASF would pay Body Shop $100,000 "in consideration of Body Shop fulfilling all of its obligations under th[e Requirements] Agreement for the entire Term." (Id.)  This paragraph further provides that, "Should this Agreement terminate for any reason prior to the expiration of the Term set forth above . . . in addition to whatever rights and obligations the parties may have to each other, Body Shop shall promptly, but in no event more than sixty (60) days, refund the Contract Fulfillment Consideration in accordance with the following schedule:

| | Purchases | Contract Fulfillment Consideration Refund |
|---|---|---|
| a. | less than 1/5th of Minimum Purchases | 110% |
| b. | less than 2/5th and greater than 1/5th of Minimum Purchases | 95% |
| c. | less than 3/5th and greater than 2/5th of Minimum Purchases | 75% |
| d. | less than 4/5th and greater than 3/5th of Minimum Purchases | 55% |
| e. | less than 5/5th and greater than 4/5th of Minimum Purchases | 35% |
| f. | After 5/5th of Minimum Purchases | 0% |

(Id. at p. 4.)

The Requirements Agreement also stated that BASF would "loan" specified equipment to Body Shop.  (Id.)  The relevant provision makes clear that BASF would retain ownership of the loaned equipment, and provides that, "at the option of BASF, [the loaned equipment] shall be surrendered to BASF at the end of this Agreement."  (Id.)  Defendant Linda Larson, the owner of Body Shop, signed the Requirements Agreement on behalf of Body Shop.[1]

According to the Complaint and an affidavit provided by BASF representative Caroline Cooper, in or around July 2022, Body Shop closed its business without fulfilling the $487,000 Minimum Purchase Requirement, and it failed to refund the Contract Fulfillment Consideration to BASF and failed to return the loaned equipment.  (Doc. 1, p. 4; doc. 22-1, p.4.)  At the time it closed, Body Shop had purchased "approximately $305,528.27 in BASF Refinish Products," which was $181,471.73 less than the Minimum Purchase Requirements amount of $487,000. (Doc. 1, p. 4; doc. 22-1, p. 4.)  Thus, BASF claims that it is owed the remaining Minimum Purchase Requirements balance, plus a refund of 55% of the Contract Fulfillment Consideration, plus the value of the unreturned loaned equipment.  (Doc. 1, p. 4; doc. 22-1, pp. 3–4.)  Accordingly, BASF claims it has suffered damages in a total amount of "not less than $255,871.73."  (Doc. 1, p. 6.)

BASF alleges that it "has fulfilled its obligations and remains ready, willing, and able to perform all obligations, conditions, and covenants required under the Requirements Agreement." (Id. at p. 4.)  BASF attached as an exhibit to its Complaint a copy of a letter it sent to Body Shop, demanding "repayment of amounts owed to BASF . . . of $74,400 as a result of [Body Shop's]

---

[1]  The Requirements Agreement includes an "Owners' [sic] Personal Guaranty" provision, stating that Larson "unconditionally guarantee[d] the performance of Body Shop under the terms of the Agreement" and "personally guarantee[d] any repayment of the Contract Fulfillment Consideration to BASF as may be required under this Agreement."  (Doc. 1-1, p. 5.)

unilateral termination of the Requirements Agreement." (Doc. 1-2, p. 1.) The letter advised that, if Body Shop failed to repay the amount owed within ten days, BASF would "seek all damages to which [it] is entitled, for payment of the $74,400 and lost profits, resulting from [Body Shop's] breach of the Requirements Agreement." (Id. at p. 2.)

Plaintiff filed this action on September 23, 2024, asserting claims for breach of contract and unjust enrichment, and also seeking declaratory relief (specifically, a "judicial declaration of BASF's and Defendants' respective rights under the Requirements Agreement"). (See generally doc. 1.) For the breach of contract claim, BASF seeks an award of "not less than $255,871.73" (which is comprised of $55,000 in refunded Contract Fulfillment Consideration, $19,400 for the value of the loaned equipment, and $181,471.73 for the "remaining balance of the Minimum Purchases requirement"). (Id. at pp. 5–7.) For the unjust enrichment claim, BASF claims Body Shop has been "unjustly enriched by $74,400" (the total of the unreturned portion of the Contract Fulfillment Consideration refund and the value of the loaned equipment) and that BASF is entitled to be compensated in full, together with interest. (Id. at p. 9.)

Body Shop was served pursuant to O.C.G.A. § 9-11-4 via service on the Secretary of State on May 21, 2025, (docs. 14 & 15), and BASF corrected service on the Secretary of State on June 23, 2025, (see doc. 19). When Body Shop failed to timely plead or otherwise respond to the Complaint, Plaintiff obtained a Clerk's Entry of Default as to Body Shop on August 28, 2025. (Doc. 21.) Plaintiff then filed the instant Motion for Default Judgment on September 11, 2025, seeking an award of $255,871.73 in damages and $790.00 in costs. (Doc. 22.) BASF makes clear in its Motion that it is only pursuing a default judgment against Body Shop and it is not seeking a default judgment against Larson. (Id. at p. 1 n.1.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55 establishes a two-step procedure for a party to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after receiving the clerk's default, the Court can enter a default judgment provided the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). However, the clerk's entry of default does not automatically warrant entry of default judgment. "[T]hree distinct matters emerge as essential in considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages. Before the Court can grant plaintiff's motion for default judgment, all three must be established." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). Thus, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007); see also Eagle Hosp. Physicians v. SRG Consulting, 561 F.3d 1298, 1307 (11th Cir. 2009). In assessing liability, the Court must employ the same standard as when addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) ("Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim.").

**DISCUSSION**

### I.    JURISDICTION

The Court must "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." Odyssey Marine Exploration, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel, 727 F. Supp. 2d 1341, 1345 (M.D. Fla. 2010); see also Geodetic Servs., Inc. v. Zhenghzou Sunward Tech. Co. Ltd., No. 8:13-CV-1595-T-35TBM, 2014 WL 12620804, at *2 (M.D. Fla. Apr. 4, 2014) ("A default judgment is void in the absence of the Court's personal jurisdiction over the defendant . . . .").

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). The well-pleaded allegations of the Complaint establish that BASF is a citizen of Delaware (its state of incorporation) and New Jersey (the location of its principal place of business), that Defendant Body Shop is a citizen of Georgia (its state of incorporation and the location of its principal place of business), and that Defendant Larson is a citizen of Georgia. (Doc. 1, p. 1); see 28 U.S.C. 1332(a)(c)(1) ("corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"). As to the amount in controversy, Plaintiff asserts that Body Shop's breach of the Requirements Agreement entitles Plaintiff to an award of not less than $255,871.73. (See doc. 1, pp. 7, 10.) Additionally, personal jurisdiction over Body Shop is proper as the uncontroverted allegations establish that it is (or, at all relative times, was) a Georgia corporation with a principal place of business in Georgia. Plaintiff has also satisfied the requirements for proper service, as described in the Background Section, supra. (See docs. 14, 15 & 19.)

6

## II.    LIABILITY

### A.    Breach of Contract

Paragraph 7 of the Requirements Agreement provides that "[the] Agreement and performance or non-performance hereunder shall be governed by and construed under the laws of the State of Michigan without regard to principles of conflicts of law." (Doc. 22-2, p. 5.)  To state a breach-of-contract claim under Michigan law, a plaintiff must allege (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach.  See Media One Commc'ns LLC v. Macatawa Bank Corp., No. 333153, 2017 WL 2989039, at *2 (Mich. Ct. App. July 13, 2017) (citation omitted).

Plaintiff's well-pleaded allegations, which have been admitted by Body Shop as a result of its default, satisfy these required elements.  The parties formed a contract and Body Shop breached the contract by shutting down its operations without meeting the Minimum Purchase Requirements amount, failing to return the loaned equipment after breaching the contract, and failing to pay the required Contract Fulfillment Consideration refund amount.  This has resulted in damages to BASF.

### B.    Unjust Enrichment

The factual allegations underlying BASF's unjust enrichment claim are that Body Shop has been unjustly enriched by its retention of the unearned portion of the Contract Fulfillment Consideration ($55,000) and the loaned equipment (valued at $19,400) without having fulfilled its end of the parties' agreement.  (Doc. 1, pp. 8–9.)  These claims are duplicative of the allegations about the Contract Fulfillment Consideration and the loaned equipment that are asserted in conjunction with the breach of contract claim.  Moreover, BASF seeks the same remedy for the

7

at-issue wrongful retentions—an award of $74,400—in both the breach of contract count and the unjust enrichment count.

The Court is guided and persuaded by the reasoning stated by the district court for the Eastern District of Michigan when it denied a motion for default judgment on an unjust enrichment claim that had been pled alongside a duplicative breach of contract claim. See BASF Corp. v. R & B Custom Auto, Inc., No. 23-11107, 2023 WL 8039410, at *2 (E.D. Mich. Nov. 20, 2023). That case involved virtually identical facts relating to a buyer's premature termination of a BASF requirements agreement. The R & B Custom Auto court explained:

> Regardless of the default, BASF cannot succeed on claims for both breach of contract and for unjust enrichment and thus, it cannot seek damages for both. This is so because unjust enrichment is only a viable claim "if there is no express contract covering the same subject matter." Belle Isle Grill Corp. v. Detroit, [666 N.W. 2d 271, 280 (Mich. Ct. App.] 2003). However, a party may only plead an unjust enrichment claim and a breach of contract claim in the alternative "when there is some question of whether a contract actually existed." Elia Companies, LLC v. Univ. of Michigan Regents, [966 N.W. 2d 755, 764 (Mich. Ct. App.] 2021), rev'd on other grounds, [993 N.W. 2d 392 (Mich.] 2023) (citing Keywell & Rosenfeld v. Bithell, [657 N.W. 2d 759, 775–76 (Mich. Ct. App.] 2002)). There is no such question or dispute regarding the existence of the contract in this case. Accordingly, BASF can only seek contractual damages, which are limited to those damages that would have put it in as good of a position as it would have been had R&B not breached the contract.

Id. at *2; see also BASF Corp. v. Custom Coach, Inc., No. 24-62127-CIV, 2025 WL 1191092, at *3 (S.D. Fla. Mar. 24, 2025) ("Plaintiff's claim of unjust enrichment stems from the same allegations as its breach-of-contract claims. Therefore, relief cannot be granted on this claim, as the business relationship between Plaintiff and Defendants was governed by express contracts.") (citing Carey v. Foley & Lardner, LLP, No. 321207, 2016 WL 4203435, at *3 (Mich. Ct. App. Aug. 9, 2016) (reasoning an unjust enrichment claim should have been dismissed because an express contract existed concerning the same subject matter)).

Here, there is likewise no question or dispute regarding the existence of a contract (the Requirements Contract), and the Court has already found that Body Shop is liable for breaching the Requirements Agreement by, *inter alia*, retaining the loaned equipment and the unearned Contract Fulfillment Consideration.    Accordingly, BASF cannot recover under an unjust enrichment theory for those same wrongs.

## C.    Declaratory Judgment

In Count IV, BASF seeks a judicial declaration of the parties' "respective rights under the Requirements Agreement," including, specifically, that the Requirements Agreement "is in full force and effect" and that "Defendants are in breach of the Requirements Agreement." (Doc. 1, p. 9.)  BASF does not request a default judgment on that claim, however, and it is therefore deemed abandoned.  See, e.g., Kanga Care, LLC v. Bumbum Babies, LLC, No. 1:22-cv-009, 2022 WL 22650525, at *3 (S.D. Ga. Oct. 25, 2022) (finding that plaintiff abandoned its claim under 35 U.S.C. § 271(c) because, although the claim was alleged in the complaint, plaintiff did not seek recovery for it in its default judgment motion).

However, even if the claim has not been abandoned, the Court finds that a declaratory judgment would not be appropriate here.  "It is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory." Otwell v. Ala. Power Co., 747 F.3d 1275, 1280 (11th Cir. 2014) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 286–88 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.")).  Here, the Court has already found that the Requirements Agreement was in effect and that Body Shop breached it.  Thus, the legal rights that BASF seeks to vindicate through its declaratory judgment claim are entirely resolved by the breach of contract claim.

9

Custom Coach, Inc., 2025 WL 1191092, at *3 ("In any event, the Court's determination that Defendants are liable for breach of contract fully addresses the legal rights at issue in this claim. As a result, a declaratory judgment would serve no practical purpose, and the Court declines to grant this relief."). Thus, even if BASF did not abandon its request, the Court declines to grant declaratory relief.

## III.    DAMAGES

Having established Body Shop's liability for breach of contract, BASF must also establish entitlement to the damages it claims. On a motion for default judgment, "[d]amages may only be awarded if the record adequately reflects the basis for the award through a hearing or detailed affidavits establishing the necessary facts." Carrier v. Jordaan, 746 F. Supp. 2d 1341, 1352 (S.D. Ga. 2010) (citing Bardfield v. Chisholm Prop. Circuit Events, LLC, No. 3:09cv232, 2010 WL 2278461, at *7 (N.D. Fla. May 4, 2010)). Awarding money damages is not appropriate "without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). Here, the sum is capable of mathematical calculation based on the record before the Court. However, "[e]ven in the default judgment context, '[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters.'" Vision Bank v. Hill, No. 10-0333, 2011 WL 250430, at *2 (S.D. Ala. Jan. 25, 2011) (quoting Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003)).

BASF has adequately shown that it is entitled to a refund of 55% of the Contract Fulfillment Consideration under the clear terms of the Requirements Agreement. (See doc. 22-2, pp. 3–4 (providing, in Paragraph 3, that, in the event that the Requirements Agreement is terminated and the Body Shop has only purchased "less than 4/5th and greater than 3/5th of Minimum Purchases," Body Shop shall "refund the Contract Fulfillment Consideration" (which was $100,000) at a rate

of 55%).)  Accordingly, BASF is entitled to damages in the amount of $55,000 for Body Shop's breach of that provision.

BASF has also adequately shown that it is entitled to an award representing the value of the loaned equipment, which the Requirements Agreement made clear was and remained the property of BASF. (See id. at pp. 4–5.)  According to the sworn testimony of BASF's Eastern Zone Manager, the value of the unreturned loaned equipment is $19,400.  (Doc. 22-1, pp. 2–3.) Thus, BASF is entitled to damages in the amount of $19,400 for Body Shop's breach of the loaned equipment provision.

BASF has not shown, however, that it is entitled to an award of $181,471.73—the Minimum Purchase Requirements balance.  Under a breach of contract theory under Michigan law, "[t]he remedy . . . is to place the nonbreaching party in as good a position as if the contract had been fully performed." Corl v. Huron Castings, Inc., 544 N.W. 2d 278, 280 (Mich. 1996). Awarding BASF the balance of the Minimum Purchase Requirements would leave BASF better off than under the contract. "Unlike in a case of goods actually sold and delivered where the purchase price would be the most appropriate measure of damages, here, [BASF] would receive not just the profit it would have stood to gain under the contract, but also the value of goods that it never actually delivered to [Body Shop]." BASF Corp. v. O & M Auto Collision, Inc., No. 24-CV-23435-RAR, 2024 WL 5165879, at *5 (S.D. Fla. Dec. 18, 2024).  It additionally bears noting that no provision of the Requirements Agreement mandates that Body Shop pay the balance of the Minimum Purchase Requirements if it were to breach the Agreement prior to meeting the specified amount.

The Court thus finds that Plaintiff is entitled to "*at most* . . . the profit it would have made had Plaintiff purchased the additional . . . products." Id. (quoting BASF Corp. v. Medina Auto & Collision, Inc., No. 21-CV-3556, 2022 WL 2302152, at *1 (E.D.N.Y. June 27, 2022) (emphasis in

original)).  This determination is consistent with decisions by other courts applying Michigan law to a request by BASF for an award in the amount of the remining minimum purchase "balance" on a requirements agreement.  As one court recently put it:

> In contrast, the $402,307.42 would be a windfall to [BASF]—which Michigan law does not allow.  See D'Avanzo v. Wise & Marsac, P.C., 565 N.W. 2d 915, 920 (Mich. Ct. App. 1997) (stating damages for a breach of contract "are limited to the monetary value of the contract had the breaching party fully performed under it" (citation omitted)).  The $402,307.42 amount does not account for the costs [BASF] would incur in performing under the contract, so awarding [BASF] that amount would improperly put [BASF] in a better position that it would have been had all parties fully performed under the Requirements Contract.

Custom Coach, Inc., 2025 WL 1191092, at *4; see also BASF Corp. v. Just Paint It Inc., No. 8:23-CV-2921-WFJ-AEP, 2024 WL 4045485, at *2 (M.D. Fla. Aug. 8, 2024) (reaching same result as to damages under Michigan law); R & B Custom Auto, Inc., 2023 WL 8039410, at *2 (same); Medina Auto & Collision, Inc., 2022 WL 2302152, at *1 (same); BASF Corp. v. Savage, No. CV ELH-19-3597, 2021 WL 1312903, at *4 (D. Md. Apr. 8, 2021) (same); BASF Corp. v. Alpha Car Ctr., Inc., No. CV 20-0246 FMO (MAAx), 2021 WL 8084669, at *5 (C.D. Cal. Jan. 20, 2021) (same); BASF Corp. v. VAG Auto Body, LLC, No. 1:20-CV-0019 (RDA/JFA), 2020 WL 6494917, at *4 (E.D. Va. June 12, 2020), report and recommendation adopted, 2020 WL 6493426 (E.D. Va. Nov. 4, 2020) (same); BASF Corp. v. Original Fender Mender, Inc., No. 23-CV-2796, 2024 WL 3740439, at *9–11 (E.D.N.Y. Aug. 10, 2024), report and recommendation adopted (Sept. 27, 2024), judgment entered, No. 23-CV-2796 (HG) (JAM), 2024 WL 4648142 (E.D.N.Y. Sept. 30, 2024) (reaching same result as to damages under analogous New York law); BASF Corp. v. Exotic Collision Ctr., Inc., No. 2:18-CV-09350-RGK-SS, 2019 WL 6317772, at *5 (C.D. Cal. Apr. 11, 2019) (reaching same result as to damages under analogous California law); BASF Corp. v. Nu-Vision, LLC, No. 6:09-CV-894-MSS-DAB, 2010 WL 11626579, at *5 (M.D. Fla. Sept. 27, 2010) (reaching same result as to damages under analogous Florida law).

BASF has not proffered any allegation, evidence, or documentation as to what amount of profit it would have made if Body Shop had purchased another $181,471.73 worth of Refinish Products.  Accordingly, BASF has not met its burden of showing entitlement to a damages award beyond the 55% refund of the Contract Fulfillment Consideration and the value of the unreturned loaned equipment (a total of $74,400).

## IV.     COSTS

BASF's Complaint requested an award of all costs and fees of the action.  (Doc. 1, p. 10.) It renewed this request in its Motion for Default Judgment, stating that it seeks a total of $790.00 in costs.  BASF attached to its Motion for Default Judgment a declaration of its counsel, stating that BASF has incurred the following taxable costs: "(1) Clerk's filing fee in the amount of $405.00 for filing of the Complaint, and (2) service of process fees in the amount of $385.00."  (Doc. 22-3, p.3.)  Copies of receipts reflecting payment of these fees are attached as exhibits to counsel's declaration.  (Docs. 22-4 & 22-5.)

As the prevailing party, BASF is entitled to these taxable costs pursuant to Federal Rule of Civil Procedure 54(d), as defined by Congress in 28 U.S.C. § 1920.  See Yellow Pages Photos, Inc. v. Ziplocal, LP, 846 F.3d 1159, 1166 (11th Cir. 2017) (citing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987) ("[Section] 1920 defines 'costs' as used in Rule 54(d)"). Accordingly, the Court awards BASF the requested amount of $405 in reimbursement for the filing fee.  However, as for the service of process fees, costs awarded for such fees may not exceed the hourly rate charged by the United States Marshals Service.  See E.E.O.C. v. W&O, Inc., 213 F.3d 600, 624 (11th Cir. 2000) (citing Collins v. Gorman, 96 F.3d 1057, 1060 (7th Cir. 1996); United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 172 (2d Cir. 1996)).  The rate for personal process of service by the U.S. Marshals is $65 per hour.  28 C.F.R. § 0.114(a)(3).  Because the documentation does not detail the private process server's

hourly rate or the time expended to effectuate service on each Defendant, taxable costs for service of process must be limited to $65 for service on Body Shop. See Martin v. Sabo, No. 8:22-cv-640-TPB-UAM, 2024 WL 1420471, at *3 (M.D. Fla. Mar. 14, 2024), adopted, 2024 WL 1417397 (M.D. Fla. Apr. 2, 2024). Accordingly, the Court includes in the default judgment against Body Shop an award of $470.00 for costs.

## CONCLUSION

For the reasons and in the manner set forth above, the Court **GRANTS IN PART** Plaintiff's Motion for Default Judgment, (doc. 22), and **ORDERS** that judgment be entered in Plaintiff BASF Corporation's favor and against Defendant L & M Collision, Inc. d/b/a Southeast Collision Center in the amount of $74,400.00, representing the amount owed for a partial refund of the Contract Fulfillment Consideration and the value of the loaned equipment, plus $470.00 in incurred costs, for a total judgment in the amount of $74,870.00. As BASF has abandoned its claims against Defendant Linda Larson (Counts II, III and IV), those claims are hereby **DISMISSED**. The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment and to close this case.

**SO ORDERED**, this 17th day of April, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

14